IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                              CRIMINAL NO.: 3:18CR00025-004

COLE EVAN WHITE

## MEMORANDUM IN AID OF SENTENCING

COMES NOW the defendant, Cole White, by counsel, and submits this Sentencing
Memorandum for the sentencing hearing scheduled for Friday, October 16, 2020.

Mr. White was charged in a Superseding Indictment with two charges.  On November 30,
2018, he pleaded guilty to Count One pursuant to the terms of a plea agreement.  The basic facts
of the offense are outlined in the "Offense Conduct" filed as PART A, paragraphs 9-34 of the
Presentence Investigation Report ("PIR"), dated October 15, 2019, as amended on November 13,
2019.

Pursuant to 18 U.S.C. Section 3553(c), Federal Rules of Criminal Procedure, and Section
6A1.3 of the United States Sentencing Guidelines, Mr. White, by counsel, hereby notifies this
Honorable Court that he is in receipt of the Presentence Investigation Report prepared in this
regard.

Mr. White intends to ask the Court, after considering the sentencing guidelines; the
statutory sentencing factors; his cooperation with law enforcement and the United States
Attorney; the time of incarceration that he has already served; as well as the recent
unprecedented COVID 19 pandemic; to depart downward from the sentencing guidelines range
and to impose a sentence of time served and/or combined with home detention and supervised

1

release. USSG Section 5C1.1(c)(2)(3) and (d)(2). Such a sentence would be sufficient but not greater than necessary to satisfy the purposes of sentencing.

## ARGUMENT

1. Legal Standard

Congress has mandated that federal courts impose the least amount of imprisonment necessary to accomplish the purposed of sentencing as set forth in 18 U.S.C. Section 3553(a). Those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following:  the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from future crimes of the defendant and to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. Section 3553(a).

II. Application of Sentencing Factors

A. *The Personal History and Characteristics of Cole White.*

Cole White is 26 years old and was born and raised in California.  His parents are both employed.  Cole graduated from Clayton Valley High School in 2014 and is presently a student at San Francisco State University in San Francisco, California.

Cole was arrested on these charges in the Northern District of California on October 2, 2018 and remained in federal custody until May 22, 2019, at which time he was released on a $10,000 unsecured bond with pretrial supervision. Upon his release on bond in May, 2019, Cole has

attended college (received Dean's List honor for both the Fall 2019 and Spring 2020 terms while achieving a 3.3 GPA) and has worked for his father's sprinkler repair company in Clayton, California (40 hours weekly during summer, and part-time since his enrollment in school). While on pretrial release he has been on home electronic monitoring and has had perfect record of compliance.  Prior to attending college, Cole had a solid work history since 2012.

<u>Downward departure or Variance</u>

A "variance" outside the guideline range provided for in the *Guidelines Manual* should occur after consideration of all relevant departure provisions. *Gall v. United States*, 552 U.S. 38, 49 (2007). In sum, the ability to vary preserves the district court's ultimate ability to impose, regardless of what the guidelines range is found to be, a sentence that it views is "sufficient, but not greater than necessary" to serve the goals of sentencing. 18 U.S.C. Section 3553(a), See, e.g. *United States v. Ausburn*, 502 F.3d 313, 327 (3rd Cir. 2007).

<u>COVID-19 Creates Circumstances That Support a Variance</u>

In addition to his cooperation with the government and his stellar performance while on bond, Cole also asks the Court to consider the remarkably dangerous set of events that has ravaged our country, and the world, this year and to order a downward departure that would allow him to serve a sentence that does not include any additional incarceration. As of April 1, 2020, SARS-COV-2, a novel coronavirus causing COVID-19, has infected over a million people in the United States, leading to over 200,000 deaths so far.[1] The President of the United States had to declare a national emergency. Nearly every city in the State of California has experienced

---

[1] *Coronavirus Map: Tracking the Spread of the Outbreak*, THE NEW YORK TIMES March 18, 2020, https://nyti.ms/2U4kmud (updated regularly).

a COVID-19 outbreak via community transmission.

Evidence shows that the virus has a mortality rate *ten times* greater than the seasonal flu and is more infectious than the Ebola virus. Emerging studies regarding COVID-19 indicate that the spread of the virus is mostly via respiratory droplets among close contacts[2] and through contact with contaminated surfaces or objects. Newly emerging evidence that the virus may be viable for hours in the air is particularly concerning for those who reside in small, confined spaces with poor ventilation.[3] We have reached the point where community spread is occurring throughout the United States, with the number of cases is growing by the day.

The nation's health systems are already strained, and social distancing measures have been recommended by the Center for Disease Control (CDC).[4] The recommended social distancing measures are nearly impossible to implement and adhere to in detention facilities where detained individuals share dining, bathing and sleeping areas, and testing for the virus in county jails remains largely unavailable. In addition to threatening the well-being of detained individuals, COVID-19 is a threat to corrections staff who necessarily move between the community and the detention facilities where they work.

### a. *Conditions in Detention Facilities*

Jails and prisons are designed to maximize control of the incarcerated population, not to

---

[2] Close contact is defined as: a) being within approximately six feet (two meters) of a COVID-19 carrier for a prolonged period of time; close contact can occur between inmates while sharing a cell/pod or communal area such as a dining or bathing area with a COVID-19 carrier; b) having direct contact with infectious secretions of a COVID-19 carrier (e.g., being coughed on).

[3] https://www.medrxiv.org/content/10.1101/2020.03.09.20033217v1.full.pdf

[4] https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-shelters/index.html

minimize disease transmission or to efficiently deliver health care. Detention facilities are crowded with unsanitary conditions, poor ventilation, lack of easy or quick access to hygienic materials and cleaning supplies such as soap and water or hand sanitizers, and offer poor nutrition. Despite a general moratorium on family visits, the daily departure and return of corrections employees, the transfer of individuals from one location to another, and the intake of newly detained individuals from the community compounds issues with disease control and complicates the prevention and detection of infectious disease outbreaks.[5] The likely spread of coronavirus within jails creates a risk beyond their walls as well: on March 9, 2020, fifteen United States Senators sent a letter to the Director of the Bureau of Prisons, recognizing that "the uncontained the spread of coronavirus in federal prison and jails endangers the federal prison staff, the inmate population, and the general public."[6] Particularly with regard to COVID-19, a timely response to reported and observed symptoms is needed to interrupt viral transmissions. However delays in testing, diagnosis and access to care have been systemic in jails and prisons.

The physical structure of the shared room space in detention facilities does not allow for compliance with the six feet social distancing order. It does not allow for inmates to humanely

---

[5] Flagg, Anna Flagg and Neff, Joseph, "Why Jails Are So Important in the Fight Against Coronavirus," THE MARSHALL PROJECT March 31, 2020 ("Picture thousands of cruise ships jammed with guests but short on hand sanitizer, protective gear and medical care. Every week, a quarter of the passengers get off, replaced by new people with the potential to either infect or be infected with the coronavirus. . . . There is a place like that in your community: the county jail, captained by your local elected sheriff, who is charged with preventing COVID-19 outbreaks but most likely has limited supplies and often no say in who enters and leaves the jail.") available at https://www.themarshallproject.org/2020/03/31/why-jails-are-so-important-in-the-fight-against-coronavirus

[6] March 9, 2020 Letter from Elizabeth Warren *et. al.* to Michael Carvajal (emphasis added), *available at* http://www.fd.org/sites/default/files/covid19/2020-03-09_senator_warren_letter_to_bop_re_coronavirus.pdf

isolate themselves if they are sick. Inmates are often locked-down in response to the pandemic, which means that they are denied showers and other means to help protect themselves against disease. For these reasons, transmission of infectious diseases in jails and prisons is not uncommon, particularly those transmitted by respiratory droplets. It is estimated that up to a quarter of the American prison population has been infected with tuberculosis,[7] with a rate of active tuberculosis infection that is 6-10 times higher than the general population.[8] Flu outbreaks frequently occur in jails and prisons throughout the United States.[9] Importantly, there are currently no antiviral drugs licensed by the U.S. Food and Drug Administration to treat COVID-19, or post-exposure prophylaxis to prevent infection once exposed. Regardless of any efforts individual facilities might make to curtail the spread of disease, prisons are a dangerous place to be held during a global viral and deadly pandemic.

Cole respectfully asks that this Court recognize the wisdom of taking preventative measures and make broad use of alternatives to incarceration to ensure the safety of the community and a defendant's circumstances and safety.

---

[7] Hammett TM, Harmon MP, Rhodes W., *The burden of infectious disease among inmates of and releases from US correctional facilities*, 1997, AM J PUBLIC HEALTH, 2002, vol. 92 (pg. 1789-94).

[8] Centers for Disease Control Prevention (CDC). Prevention and control of tuberculosis in correctional and detention facilities: recommendations from CDC, *MMWR Morb Mortal Wkly Rep*, 2006, vol. 55 (pg. 1-48).

[9] Dober, G. "Influenza Season Hits Nation's Prisons and Jails," *Prison Legal News*, June, 2018 (pg. 36) https://www.prisonlegalnews.org/news/2018/jun/5/influenza-season-hits-nations-prisonsand-jails/; Pandemic influenza and jail facilities and populations, Laura Maruschak, et. al., American Journal of Public Health, September 2009.

## CONCLUSION

Cole White is fully aware of the ramifications of his actions in this case. Prior to this case, he has never had a conviction or citation of any sort in his entire life. He has already served over seven months in jail and now faces life as a convicted felon.  Cole absolutely understands the consequences of his actions and he will certainly be deterred from committing any crimes in the future.  This Court has permitted him to remain on bond with home electronic monitoring pending the final outcome of this case and he has been totally compliant with all the conditions placed on him.  He has taken the judicial proceedings against him extremely seriously.  Cole has accepted full responsibility for his actions and is extremely remorseful for his conduct.  From the beginning, he has made every effort to assist the government in its prosecutions of like crimes. Cole respectfully asks the Court to depart downward and to allow him to serve a sentence without further incarceration.

Respectfully submitted,

COLE EVAN WHITE

By Counsel

/s/Michael T. Hemenway
Michael T. Hemenway, Esquire
700 East High Street
Charlottesville, VA  22902
Telephone: (434) 296-3812
Facsimile: (434) 293-3630

CERTIFICATE OF SERVICE

I hereby certify that on 9th day of October, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

s/Michael T. Hemenway